IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |  | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | \| | | |
| v. | \| | CRIMINAL CASE NO. | |
| SYED MOHAMMED FAISAL QADRI, | \| | 1:19-CR-00290-JPB-JSA | |

**REPORT AND RECOMMENDATION**

Defendant Syed Mohammed ("Defendant" or "Mohammed") is charged in a 31-count indictment with importing and distributing misbranded drugs, and conspiring to do so, in violation of the Food, Drug, and Cosmetic Act ("FDCA"). Specifically, the indictment alleges that Defendant operated a business that distributed male sexual enhancement pills manufactured in China, and imported such pills under false descriptions. The case is before the Court on Defendant Mohammed's Motion to Suppress Evidence [29], which seeks to suppress the fruits of a search of Defendant's warehouse. Defendant argues that the affidavit supporting the warrant failed to establish probable cause and that the warrant was not sufficiently particularized. As explained below, the affidavit established probable cause. Further, while the warrant was imperfect in its description of the material to be seized, no suppression is warranted based on lack of particularity. Thus, Defendant's Motion [29] should be **DENIED**.

1

## DISCUSSION

### A. *Probable Cause*

A magistrate judge asked to issue a search warrant must make a practical decision, given all the facts set out in the application, that there is a fair probability that contraband or evidence of a crime will be found in a particular place. *See Illinois v. Gates*, 462 U.S. 213 (1983). Courts reviewing the sufficiency of warrant applications after-the-fact should not do so in a hyper technical manner; Rather, courts must employ a realistic and common-sense approach, to encourage recourse to the warrant process and to recognize the significant deference afforded to the decisions of the issuing judge. *Id.*; *United States v. Miller*, 24 F.3d 1357 (11th Cir. 1994). An affidavit that relies on informants or other confidential sources is judged like any other application. As the Supreme Court has explained:

> [The issuing judge is] simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed.

*Gates*, 462 U.S. at 238-39 (citation omitted).

Moreover, regardless of whether it would have issued the warrant, the reviewing court must deny suppression on the grounds of good faith reliance unless the affidavit and/or warrant were so facially deficient that official belief in

2

the warrant's legality would be entirely unreasonable. *United States v. Martin*, 297 F.3d 1308 (11th Cir. 2002). "Good faith" is an objective standard determined by what a reasonable police officer under the circumstances would perceive, not what a judge or other legal expert would perceive. *United States v. Taxacher*, 902 F.2d 867, 872 (11th Cir. 1990). In other words, "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *United States v. Leon*, 468 U.S. 897, 916, 919 (1984).

At issue here is a search conducted in a warehouse in the metro Atlanta area (the "Subject Premises"), that allegedly was used by Defendant to store and distribute misbranded drugs. The affidavit first discussed the activities of the Co-Defendant, Ronnie Bailey. Law enforcement identified Bailey as a suspect who regularly received shipments of male sexual enhancement pills from China, at different locations. *See* Warrant [32-1] at ¶¶ 22-40. Some of these shipments were interdicted and searched at the U.S. border. *Id*. The U.S. Postal Service determined that packages shipped to addresses controlled by Bailey were tracked from computers assigned to an IP address associated with Mohammed at an address in Lawrenceville, Georgia. *Id*. ¶¶ 42-47. Bailey also later told law enforcement that he received packages on behalf of an individual he knew as "Faisal," and delivered the packages to "Faisal" at various locations. *Id*. ¶ 50. ("Faisal" was later identified as the Defendant, as explained below). Cell phone

records also showed that Bailey communicated with Mohammed on days when Bailey received packages. *Id.* ¶ 53.

Law enforcement identified the Subject Premises based on information from a confidential informant. The affidavit stated that the informant had knowledge of male enhancement pills and the wholesale industry in Atlanta, and specifically identified the Defendant, who the informant knew as "Faisal," as a distributor of such pills. *Id*. ¶¶ 51-53. The informant provided a specific telephone number for "Faisal," which number matched Bailey's phone records, and the informant also identified the Subject Premises as a location of Defendant's wholesale business. *Id*. The affidavit stated that the informant has successfully assisted other investigations by providing information that has led to discovery of evidence in other searches and the initiation of other prosecutions. *Id*. ¶¶ 52.

The informant, working at the direction of law enforcement, made two controlled purchases of male enhancement pills at the Subject Premises within the thirty days prior to the issuance of the search warrant. *Id*. ¶¶ 54-56. On one of these occasions, the informant took an undercover video recording of the inside of the Subject Premises including stores of male enhancement pills. The Defendant on the other occasion also specifically told the informant that he still maintained a substantial quantity of male enhancement pills in the Subject Premises. *Id*.

Defendant argues that the warrant application "fails to allege specific facts establishing probable cause that the Subject Premises was linked to the alleged offense." Def. Motion [29] at 3. Specifically, while Defendant appears to concede that the affidavit sufficiently establishes his involvement in the importation of misbranded drugs, he argues that none of the deliveries detailed in the affidavit involved the Subject Premises. Specifically, Bailey did not identify the Subject Premises as a location where he delivered any shipments to "Faisal," and the IP addresses identified by the Postal Service were not associated with the Subject Premises. The Defendant characterizes the identification of the Subject Premises as being based only on the conclusory assertions of the informant, which the Defendant argues were insufficiently reliable to constitute probable cause.

Defendant's challenges to the existence of probable cause clearly fail under the deferential standards outlined above. To be sure, by itself, the conclusory statement that the informant had "knowledge" of the male enhancement pill and wholesale industry in Atlanta was worthy of only minimal weight, as this statement provided no details as to the informant's basis of such "knowledge." However, this statement was not the only basis to conclude that the informant's tips were reliable. The informant provided specific details suggestive that he/she had personal knowledge of the facts, including the name of the distributor ("Faisal"), a cell phone number, and a warehouse location. Importantly, several of these details

were corroborated by Bailey (who also provided the name "Faisal"), and cell phone records (which showed that Bailey was in touch with the cell number on days of deliveries). Also, the affidavit stated that law enforcement had successfully relied on information from the informant in past investigations.

While the above information sufficed, the affidavit supplied even more. Indeed, the affidavit described two specific transactions that the informant engaged in with the Defendant at the Subject Premises, within a few weeks of the issuance of the warrant. At least one of these transactions was recorded. Defendant's motion does not address these undercover "controlled buys," and characterizes the warrant as being based only on the informant's conclusory historical information. But these undercover buys provided a substantially reliable basis for probable cause. That the informant purchased illegal contraband at the Subject Premises in transactions monitored by law enforcement, and recorded on video, is clear support for the conclusion that evidence of this operation would be found at the Subject Premises.[1] Defendant's challenge to the existence of probable cause therefore clearly fails.

### B. *Particularity*

---

[1] Even if there were some debate about whether probable cause was established—which there is not—the facts are more than enough to support the agent's good faith belief in the sufficiency of the facts. Thus, suppression is clearly not warranted based on probable cause.

While Defendant's challenge on the basis of probable cause is meritless, the question of particularity is much closer and required oral argument [35] and supplemental briefs from the parties [40][41].  While the language of the warrant was imperfect, the Court ultimately recommends that Defendant's motion be denied.

A search warrant must "particularly describ[e] ... the persons or things to be seized."  U.S. CONST. AMEND. IV.  As the Supreme Court has explained:

> General warrants of course, are prohibited by the Fourth Amendment. [T]he problem (posed by the general warrant) is not that of intrusion Per se, but of a general, exploratory rummaging in a person's belongings. ... (The Fourth Amendment addresses the problem) by requiring a "particular description" of the things to be seized... (citation omitted). This requirement makes general searches impossible and prevents the seizure of one thing under a warrant describing another.

*Andresen v. Maryland*, 427 U.S. 463, 479 (1976) (internal citations and quotation marks omitted).

Defendant does not dispute that the warrant sufficiently identified the premises to be searched, that is, the Subject Premises.  The issue in this case, rather, relates to the identification of the specific property to be searched for and seized.  Attachment B to the warrant included a lengthy and very specific list of various categories of documents and items.  The attachment also lists certain code provisions that these items would evidence violations of.  However, by virtue of

7

the wording of the opening paragraph of Attachment B, these items were arguably identified as mere examples. The opening paragraph reads as follows:

LIST OF ITEMS TO BE SEARCHED AND SEIZED

> Evidence, fruits, and instrumentalities of violations of federal law**, *including, but not limited to***: Title 18, United States Code, Section 545 (smuggling); Title 18, United States Code, Sections 2320(a)(4) and (b)(3)(A) (trafficking in counterfeit drugs); Title 21, United States Code, Sections 331(c) and 333(a)(1)/(2) (receiving misbranded drugs in interstate commerce and delivery thereof for pay); and Title 21, United States Code, Sections 331(i)(3) and 333(a)(1)/(2) and/or (b)(8) (distributing or holding with intent to distribute counterfeit drugs). This evidence, fruits, and instrumentalities *includes*:

[32-1] at 10 (emphasis added). Read literally, this language purported to allow a search for any violations of any federal laws, with the identified provisions of the FDCA and other statute being merely examples. While the subsequent pages went on to list various specific categories of items, this list was described merely as material "include[d]" in the warrant authorization. By its natural reading, in other words, the opening paragraph turned the Attachment into suggestions, as opposed to meaningful restrictions on the Government's search.

The Court has little hesitation finding that, by itself, the language of Attachment B would permit an unconstitutional general search. Catch-all provisions and phrases, such as "including but not limited to," are not advisable, but do not always create a general warrant, so long as those otherwise inclusive phrases are at least "properly limited to some direct relation to the crimes outlined

in the warrant." *United States v. Patel*, 429 Fed. Appx. 885, 888 (11th Cir. 2011) (unpublished); *United States v. Santarelli*, 778 F.2d 609, 615 (11th Cir. 1985 (upholding a warrant that broadly authorized the seizure of "all property," because at least the language of the warrant limited the scope "to items that constituted evidence of loansharking."). Here, both the list of items and the list of crimes in the attachment were non-exclusive, effectively authorizing the search for anything the agents believed to be evidence, fruits or instrumentalities of *any* federal crime.

The Government urges the Court to uphold the warrant based only on the language of Attachment B, or at least find that the executing agents would have acted reasonably by relying in good faith on this judicially-approved language. The Court is reluctant, however, to declare that it would be reasonable for an officer to believe that a search without any meaningful limits—or limited only to a search for evidence of any federal crime—would be constitutional.

The resolution of this issue is not so simple, however. After all, the language of the warrant is not limited to Attachment B. Read in conjunction with the face page of the warrant [32-1] at 1, the relevant language reads as follows:

> In [the Subject Premises] there is now concealed certain property, certain information, and certain data, namely,
>
> See Attachment B,
>
> Which constitutes evidence of a crime, contraband, fruits of crime, or items illegally possessed, and property designed for use, intended for use, or used in committing a crime, concerning violations of Title 21,

> United States Code, Section(s) 331(a) and 331(c) and Title 18, United States Code, Section(s) 545. I find that the affidavit(s) establishes probable cause to search for and seize the certain property, certain information, and certain data from the property described above.

Id. Thus, while the attachment itself refers to evidence of "any federal crime," the subsequent language on the face of the warrant itself refers more precisely to evidence "concerning violations of" three specified crimes. Unlike the attachment, the warrant lists these crimes as exclusive, that is, not as mere examples. Thus, the language of the warrant could be read as clarifying limitations as to scope, such that it did not, in fact, authorize a search as wide-ranging as the language of Attachment B alone might imply.

Considering the language of the warrant in its entirety—and not just Attachment B—suppression should be denied, at least under the deferential good-faith reliance standards. Specifically, the Court finds that a reasonable officer could have relied in good faith on the legality of this warrant duly issued by a federal judge. On this basis, suppression should be denied, although the Court urges the Government to take more care with "catchall" language in its future warrant attachments.

Furthermore, even if the warrant were so facially lacking in validity as to deprive the agents of any reasonable basis to rely on it, that would not end the inquiry. This Circuit has stated that, in the case of an overbroad warrant, if possible, the Court is to sever the "infirm portion of the warrant and suppress[]

only the evidence seized under that portion of the warrant." *United States v. Cook*, 657 F.2d 730, 731 (5th Cir. Unit A 1981); *see also United States v. Brown*, 984 F.2d 1074, 1078 (10 Cir. 1993) ("although one sentence in the warrant may have been overbroad, the infirm portion may be isolated and severed from the constitutionally adequate part.")[2]  As *Cook* explained:

> [S]uppression of all of the fruits of the search is hardly consistent with the purposes underlying exclusion. Suppression of only the items improperly described prohibits the Government from profiting from its own wrong and removes the court from considering illegally obtained evidence. Moreover, suppression of only those items that were not particularly described serves as an effective deterrent to those in the Government who would be tempted to secure a warrant without the necessary description. As the leading commentator has observed, "it would be harsh medicine indeed if a warrant which was issued on probable cause and which did particularly describe certain items were to be invalidated in toto merely because the affiant and the magistrate erred in seeking and permitting a search for other items as well." 2 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment s 4.6(f) (1978).

*Id*. at 735.

In *Cook*, the Court concluded that the facts of that case did not present "a situation in which the entire warrant is defective," because the affidavit supplied probable cause to established that several specific items would be present at the search premises and the warrant described those items with particularity. *Id.*

---

[2] The Eleventh Circuit in *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11 Cir. 1981), adopted the decisions of the Fifth Circuit dated prior to October 1, 1981 (including *Cook*, which was issued one day earlier, on September 30, 1981) as binding precedent.

Thus, that other items were not sufficiently described was cured by excluding those items, not by excluding the items that were properly described.

*Cook* involved a warrant with an overbroad clause, that purported to allow the agents to seize "books, records, and instrumentalities involved in the crime of copyright infringement," without providing any guidance as to how such items were to be identified. Because the premises in question were of a film company, such broad language arguably would have allowed a seizure of nearly all the recordings stored at the location. The Court of Appeals concluded that this language unconstitutionally authorized a "general seizure." *Id*. at 734. The Court nevertheless did not suppress the tapes labeled with the names of 12 specific films that were mentioned in the affidavit, as to which the agents had demonstrated probable cause were illegally copied. The Court suppressed all other films obtained in the search. *Id*.

Defendant argues that *Cook* is distinguishable. According to Defendant, severance cannot be accomplished here, where the overbroad language is not confined to the description of one particular item or category, but rather defines the scope of the entire warrant. Defendant points out that the "catchall" language appears in the introductory paragraph, and therefore unlike in *Cook* applies to the entire document. Defendant cites to cases outside of this Circuit, which have refused severance in cases where "catchall" language created a general warrant

authorizing search for "all evidence" of crimes, and have distinguished cases such as *Cook* as dealing only with the more limited issue of a single overbroad clause. *See Cassady v. Goering*, 567 F.3d 628 (10 Cir. 2009); *United States v. Conklin*, 154 F.Supp.3d 732, 739-41 (S.D. Ill. 2016). As *Conklin* explained:

> Truly general clauses—clauses that allow for searches for all evidence—go much farther than run of the mill overbroad clauses: they do the same harm to the particularity requirements that overbroad clauses do, but they also allow for a sweeping search through every part of a person's property and seizure of anything the police might like. That kind of rummaging is an affront to one of the main motivators of the Fourth Amendment—it allows police to behave in a way that the Founders loathed—which is why the Tenth Circuit found that severance isn't an option.

*Id*. at 740.

On the record presented here, if suppression were otherwise warranted, the Court finds that severance would be appropriate per this Circuit's guidance in *Cook*. First, Attachment B offers numerous specific categories of items for which probable cause was established. The two "catchall" phrases in the introductory paragraph are easily excised from the rest of the Attachment, and it would be a straightforward exercise to determine whether any item was seized as a result of this authority. Indeed, the Government has included the inventory of items seized, which consists primarily of boxes of pills, financial records, shipping documents, and computer media. *See* [32-1] at 3-8. All these items were among the specific categories of evidence and records described in Attachment B, and therefore were

13

not seized based on any "catchall" language. Defendant does not contest the accuracy of this document and, notably, does not allege that anything was seized outside the scope of the categories of items described in the warrant. Nor does Defendant argue that these categories were overbroad. Defendant's argument, essentially, is that even though everything seized by the agents may have been properly described, it should still all be suppressed, because the agents might have, but apparently did not, seize other material based on the word "including." Such a result would be akin to the "harsh medicine" that concerned this Circuit in *Cook*. 657 F.2d at 735.

Second, more generally, Defendant does not show that the inclusion of the catchall words actually expanded the scope of the search that the agents were authorized to undertake. Had those phrases been absent, the agents would still have been authorized to search Defendant's warehouse for well over a dozen categories and sub-categories of items, including pills, shipping records, financial records, records relating to the purchase and shipments of pills, and emails and other electronic records relating to these topics. It is hard to read the long and detailed list of items described in Attachment B and conceive of any room in the warehouse, desk drawer, file cabinet, or computer media, that the agents would not have been authorized to thoroughly search in looking for such items. Indeed, the list of items would seem to cover most or all of the operations of a business

focused on importing and distributing pills.  Again, Defendant does not allege facts to suggest otherwise, that is, that the scope of the search was materially impacted by the Attachment's use of "including" and "includes."

There can certainly be situations where "catchall" language so infects a warrant, and so expands the scope of a search, that severance would be inappropriate.  But this is not such a case.  Any impact of the two offending words in this case was at most conjectural, and on this record the Court can only conclude that the pages of properly described categories and sub-categories of evidence listed in Attachment B predominated the search.

Thus, the Court finds that, even if suppression were warranted, that remedy would be limited to items seized as a result of the offending "catchall" phrases.  In other words, the Court would excise the phrases "including" and "includes"—or even excise the introductory paragraph to Attachment B altogether—and deny suppression as to any material still described in the remaining portions of the warrant, that is, the specific listing of over a dozen categories and sub-categories.  As noted above, the Government has proffered evidence, and the Defendant does not dispute, that all the material seized during the search fell within one or more of these specific categories.  Therefore, would be no basis to suppress any of this material, even if the agents lacked a reasonable basis to rely on this allegedly unparticular warrant.

## CONCLUSION

Defendant's Motion to Suppress Evidence [29] should be **DENIED.** This matter is **READY FOR TRIAL**.

IT IS SO **RECOMMENDED** this 7th day of January, 2020.

_____
**JUSTIN S. ANAND**
**UNITED STATES MAGISTRATE JUDGE**