UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

SYED MOHAMMED FAISAL
QADRI *et al.*,

        Defendants.

CIVIL ACTION NO.
1:19-cr-00290-JPB-JSA

## ORDER

Before the Court is the Magistrate Judge's Report and Recommendation ("Report") on Defendant Syed Mohammed Faisal Qadri's ("Qadri") Motion to Suppress Evidence ("Motion").  ECF No. 47.  The Court finds as follows:

## I.    BACKGROUND

Qadri is under indictment for charges related to the alleged importation and sale of misbranded drugs in violation of several provisions of the Federal Food, Drug and Cosmetic Act.  In the instant Motion, Qadri seeks to suppress all evidence obtained by the Government during a search of his property located in Tucker, Georgia ("Premises"), pursuant to a warrant dated August 7, 2019 ("Warrant").

Qadri argues that the Warrant is invalid for two reasons.  First, he asserts the affidavit supporting the application for the Warrant failed to establish probable cause.  Among other things, the affidavit provided information regarding the activities of Qadri's co-defendant, Ronald Bailey ("Bailey"); linked Bailey's receipt of packages of the misbranded drugs to Qadri and an IP address tied to Qadri's home; described calls between Bailey's and Qadri's cellular telephone numbers; and referenced a confidential source who identified Qadri by name, provided Qadri's cellular telephone number and made two controlled purchases of the misbranded drugs *inside* the Premises.  One of the purchases was recorded by video.  Qadri, however, argues that probable cause did not exist for the Warrant to issue because "there is no information in the affidavit regarding the confidential source's basis of knowledge regarding the [Premises]" and such "material and crucial omission" demonstrates that "the affidavit fails to set forth sufficient and reliable evidence establishing probable cause."

Second, Qadri asserts that the Warrant does not meet the particularity requirements of the Fourth Amendment because the introductory paragraph of Attachment B to the Warrant expanded the scope of the Warrant beyond the specific items listed in the attachment.  That paragraph states as follows:

> Evidence, fruits, and instrumentalities of violations of federal law,
> including, but not limited to:  Title 18, United States Code, Section

545 (smuggling); Title 18, United States Code, Sections 2320(a)(4)
and (b)(3)(A) (trafficking in counterfeit drugs); Title 21, United States
Code, Sections 331(c) and 333(a)(l)/(2) (receiving misbranded drugs
in interstate commerce and delivery thereof for pay); and Title 21,
United States Code, Sections 33 l(i)(3) and 333(a)(l)/(2) and/or (b)(8)
(distributing or holding with intent to distribute counterfeit drugs).
This evidence, fruits, and instrumentalities includes:

Qadri argues that the use of the phrase "including, but not limited to" demonstrates

that the list that followed the introductory paragraph was merely illustrative and

not exclusive and thereby provided limitless authority to search the Premises in

violation of the Fourth Amendment.  Qadri also points to the use of the phrase

"any and all" in connection with certain items on the list as evidence of further

overbreadth.

    With respect to Qadri's probable cause argument, the Government outlines

several ways in which the affidavit, in its view, establishes probable cause to

search the Premises, including the controlled purchases the confidential source

completed at the Premises.  Further, the Government argues that even if the

Warrant lacked probable cause, the good faith exception applies because the

officers executing the Warrant reasonably relied upon its validity.

    With respect to Qadri's overbreadth argument, the Government responds

that the Warrant is appropriately limited in scope because the face of the Warrant

specified the relevant crimes and thereby served to limit the language in

Attachment B.  The face of Warrant provides as follows:

> in the Northern District of Georgia there is now concealed certain property, certain information, and certain data, namely,
>
> See Attachment B,
>
> which constitutes evidence of a crime, contraband, fruits of crime, or items illegally possessed, and property designed for use, intended for use, or used in committing a crime, concerning violations of Title 21, United States Code, Section(s) 331(a) and 331(c) and Title 18, United States Code, Section(s) 545.  I find that the affidavit(s) establishes probable cause to search for and seize the certain property, certain information, and certain data from the property described above.

The Government additionally asserts that the evidence actually seized

concerned only the crimes and statutes *specifically* identified in the Warrant, which

means that no evidence was obtained as a result of the catchall language.  The

Government further argues that even if the Warrant is found to be overly broad, the

evidence obtained as a result of it should not be suppressed because the agents

conducted the search in good faith and reasonably presumed that a warrant issued

by a magistrate judge would be valid.

Qadri counters that the good faith exception should not apply because the

language in Attachment B clearly reflects an intent not to limit the search, and any

reasonable law enforcement officer should have understood the Warrant to

constitute an invalid general warrant.

The magistrate judge held a hearing on the Motion, after which the parties submitted supplemental briefs on the issue of whether the Court may remedy the alleged infirmity in the Warrant by severing the language claimed to be overly broad.  Relying on several out of Circuit district and appellate court cases, Qadri contends in his supplemental brief that the Warrant is not severable.  He argues that the catchall phrase "comes in the opening paragraph which defines the scope of the entire warrant and permeates the other provisions" such that rehabilitation is not feasible.  In his view, the "'catchall' language is the language of a general warrant, explicitly authorizing the search and seizure of evidence of *any* violation of *any* federal law."  Therefore, total suppression is necessary.

The Government, on the other hand, cites *United States v. Cook*, 657 F.2d 730, 731 (5th Cir. Unit A Sept. 1981), for the proposition that "the appropriate course of action is to sever 'the infirm portion of the warrant and suppress[] only the evidence seized under that portion of the warrant.'"  The Government argues that severing the "including, but not limited to" language would limit the Warrant to authorizing a search for only evidence related to the specifically enumerated statutes and items.

The Report recommends that the Court reject Qadri's probable cause argument because not only were the "specific details [in the affidavit supporting

the warrant] suggestive that [the confidential source] had personal knowledge of the facts [of the case], including [Qadri's name], a cell phone number, and a warehouse location," but such information was corroborated by Qadri's co-defendant, Bailey.  The Report also points to the facts set forth in the affidavit detailing the two controlled purchases that occurred at the Premises, including one that was recorded.

The Report similarly recommends rejecting Qadri's argument that the Warrant should be invalidated on particularity grounds, and all evidence collected as a result of it should be suppressed.  The Report agreed with Qadri that the catchall language in the opening paragraph of Attachment B standing alone permitted an "unconstitutional general search."  However, the Report explained that

> the face of the warrant itself refers more precisely to evidence "concerning violations of" three specified crimes.  Unlike the attachment, the warrant lists these crimes as exclusive, that is, not as mere examples.  Thus, the language of the warrant could be read as clarifying limitations as to scope, such that it did not, in fact, authorize a search as wide-ranging as the language of Attachment B alone might imply.

The Report further explained that even if the Warrant were deemed to be overly broad, precedent established by *Cook* directs the Court "to sever the 'infirm portion of the [W]arrant and suppress[] only the evidence seized under that portion

of the [W]arrant.'"  Severing the catchall language in the introductory paragraph of Attachment B would leave intact the list of enumerated items in Attachment B, pursuant to which the evidence was seized.  Therefore, the Report concluded that suppression of the fruits of the search was not warranted.

The magistrate judge was not persuaded by Qadri's attempt to distinguish *Cook* on the grounds that severance was possible in that case only because the offending language was limited to specific items on the list.  The Report reiterated that the catchall language could be appropriately excised and the remainder of the Warrant deemed valid because Attachment B enumerated specific categories of items that did not rely on the catchall language.  The magistrate judge underscored that because Qadri does not argue that any of the items seized were outside the scope of the list, suppressing all evidence would constitute the "harsh medicine" that the *Cook* court discouraged.

Qadri raises three objections to the Report.  First, he contends that the magistrate judge erred by concluding that probable cause supported the Warrant because there was a "lack of evidence connecting the shipments [of the misbranded drugs] to the [Premises] or Mr. Qadri" and because the affidavit supporting the application for the Warrant "heavily relie[d] on information provided by a

confidential informant . . ., though the affidavit fail[ed] to provide any information regarding the basis of the informant's knowledge."

Second, Qadri objects to the Report's finding that the Warrant is not overly broad because the language on the face of the Warrant limited the scope of Attachment B.  Qadri counters that "the language on the face of the [W]arrant does not actually limit the scope of Attachment B or meaningfully constrain the discretion of law enforcement officers executing the warrant."

Third, Qadri objects to the Report's finding that the allegedly overly broad language is severable because, in his view, the Warrant is so deficient that it cannot be salvaged by severance or the good faith exception.  He further argues that *Cook* is inapposite because the inappropriate catchall provision in the instant Warrant "defines [its] entire scope," unlike the phrase at issue in *Cook*.

Qadri also takes issue with the Report's conclusion that there is no reason to suppress the fruits of the search since Qadri has not pointed to any evidence obtained as a result of the catchall provision.  He asserts that "[t]he fact that the agents did not find and seize evidence unrelated to the listed offenses is irrelevant."

II.   **DISCUSSION**

A.   **Legal Standard**

A district judge has broad discretion to accept, reject or modify a magistrate judge's proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 680 (1980).  Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews any portion of the Report and Recommendation that is the subject of a proper objection on a *de novo* basis and any portion to which there is no objection under a "clearly erroneous" standard.  *See also* Fed R. Crim. Pro. 59(b)(3).

A party objecting to a recommendation "must specifically identify those findings objected to.  Frivolous, conclusive, or general objections need not be considered by the district court."  *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988).  "This rule facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act."  *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009).

B.   **Analysis**

1.   **Probable Cause**

As the Supreme Court explained in *Illinois v. Gates*, a magistrate judge tasked with issuing a search warrant "is simply to make a practical, common-sense

decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." 462 U.S. 213, 238 (1983). Further, "the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed. *Id*. at 238-39.

Applying this guidance here, the Court agrees with the Report that there was more than sufficient evidence in the record to demonstrate a fair probability of finding fruits of the alleged crime at the Premises. As set forth in the Report, apart from other evidence linking Qadri to the alleged crime, the Government's affidavit supporting the Warrant provided information from a confidential source with personal knowledge of the facts, including Qadri's name, cellular telephone number and the warehouse location. The confidential source also purchased the allegedly misbranded drugs from the Premises on two separate occasions, one of which was recorded by video. These facts satisfy the "practical, common-sense" standard for determining whether there is a "fair probability" that evidence would be found at the Premises. They also represent a substantial basis for concluding that probable cause existed to issue the Warrant. As such, the Court overrules Qadri's first objection.

### 2.     Particularity/Severance

As set forth in the Report, the Fourth Amendment requires a search warrant to "particularly describ[e] ... the persons or things to be seized."  U.S. CONST. amend. IV.  "A general order to explore and rummage through a person's belongings is not permitted," and "[t]he warrant must enable the searcher to reasonably ascertain and identify the things which are authorized to be seized." *Cook*, 657 F.2d at 733.

However, "[w]hen the Government conducts a search pursuant to a warrant that does not particularly describe the things to be seized, the appropriate remedy is for the court to exclude from the evidence in a later criminal action the ***items improperly taken***."  *Cook*, 657 F.2d at 734 (emphasis added).  Therefore, the goal is to suppress the improperly obtained evidence rather than exclude wholesale any fruits of the search.  The rationale of this approach is that "[b]y removing from the evidence the items that were not particularly described, the court . . . erects a deterrent to illegal searches[;] . . . prohibits the Government from benefiting from its own wrong . . . [;] . . . [and] precludes itself from serving as an accomplice in the violation of the Constitution."  *Id*.  The *Cook* court held that "in the usual case the district judge should sever the infirm portion of the search warrant from so much of the warrant as passes constitutional muster" and reiterated that

"suppression of all of the fruits of the search is hardly consistent with the purposes underlying exclusion." *Id*. at 735.

In this case, while there are strong arguments for interpreting the language on the face of the Warrant as sufficiently limiting the introductory paragraph of Attachment B, the Court need not decide this issue. Assuming for the purposes of this Order that the introductory paragraph of Attachment B does violate the particularity requirement of the Fourth Amendment, and the language on the face of Warrant does not rehabilitate such violation, the remedy—as expressly stated in *Cook*—is to sever the offending language and exclude ***only*** the evidence obtained as a result of such language. The Court therefore agrees with the Report's recommendation to sever the catchall language from the introductory paragraph of Attachment B. Because Qadri does not contend that any of the evidence seized was taken pursuant to the severed catchall language, there is no reason to suppress any evidence in this case. For these reasons, the Court overrules Qadri's second and third objections.[1]

After due consideration of the Report, the relevant filings and Qadri's objections, the Court **APPROVES** and **ADOPTS** the Report (ECF No. 47), as

---

[1] The Court also agrees with the Report that the good faith exception would apply here, in any event, because an officer could have reasonably relied on the validity of the Warrant as it was written.

supplemented herein.  Accordingly, Qadri's Motion to Suppress (ECF No. 29) is

**DENIED**.

       **SO ORDERED** this 26th day of January, 2021.

                          _____

                          **J. P. BOULEE**

                          United States District Judge